## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN DAVID on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) NO. ) |
| vs. | ) ) **CLASS ACTION COMPLAINT** |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, VOLKSWAGEN AG, a foreign corporation, | ) ) ) <u>JURY TRIAL DEMAND</u> ) |
| Defendants. | ) ) ) |

Plaintiff Jonathan David ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, brings this Class Action Complaint against Volkswagen Group of America, Inc., and Volkswagen AG, ("Defendants" or "Volkswagen") and upon Plaintiff's own acts and experiences, information and belief, and investigation of counsel, states as follows:

### I. JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this action under 28 U.S.C. section 1332(d) of the Class Action Fairness Act because the aggregated claims of the class members in this matter exceeds the sum or value of $5,000,000 exclusive of interest and costs, because Plaintiff and Defendants are residents of different states, and there are at least one hundred members of the proposed classes.

2.     Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because Plaintiff suffered injuries as a result of Defendant's acts in this District, a substantial number of the events giving rise to this Complaint occurred in this District, and Defendant (1) is a New Jersey corporation authorized to conduct business in this District and has intentionally availed itself of

1

the laws and markets of this District by conducting business in this District; and (2) are subject to personal jurisdiction in this District.

3.     Subject-matter jurisdiction also arises under Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, et seq.

## II. PARTIES

4.     Jonathan David is a resident of Castle Rock, Colorado, located in Douglas County.

5.     Volkswagen Group of America, Inc. ("Volkswagen America") is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

6.     Volkswagen America through its various entities designs, manufactures, markets, distributes, and sells Volkswagen automobiles in multiple locations across the United States, including Colorado. Volkswagen America and/or its agents designed, manufactured, and installed the panoramic sunroofs in the vehicles at issue in this case. Volkswagen America also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the vehicles at issue in this case.

7.     Defendant Volkswagen AG ("Volkswagen Global") is a German corporation headquartered in Wolfsburg, Germany.

8.     Volkswagen Global is engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the vehicles at issue in this case, in the United States.

9.     Volkswagen Global is and was at all relevant times doing business in a continuous manner through a chain of distribution and dealers throughout the United States, including within this District by selling, advertising, promoting, and distributing Volkswagen motor vehicles.

10.     Through its wholly-owned subsidiaries and/or agents, Volkswagen Global markets its products in a continuous manner in the United States, including in this District and in the State of Colorado.

11.     Volkswagen Global is the parent of, controls, and communicates with Volkswagen America concerning virtually all aspects of the Volkswagen vehicles distributed in the United States.

12.     Volkswagen America acts as the sole distributor for Volkswagen vehicles in the United States, purchasing those vehicles from Volkswagen Global for sale in this country.

13.     Volkswagen Global also developed, reviewed, and approved the marketing and advertising campaigns designed to sell the vehicles at issue in this case.

14.     The relationship between Volkswagen Global and Volkswagen Global is governed by a General Distributor Agreement that gives Volkswagen Global the right to control nearly every aspect of Volkswagen America's operations—including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

15.     Volkswagen Group of America, Inc. is a wholly owned subsidiary of Volkswagen AG.

### III. NATURE OF THE CASE

16.     Historically, automobile sunroofs have been modestly sized, spanning just a small portion of the roof over the driver and front passenger seats.

17.     Starting in the mid-2000s, automobile manufacturers expanded sunroofs in size so that now these sunroofs (i.e., sheet(s) of glass) account for nearly the entire roof of the vehicle. These expanded sunroofs are often referred to as "panoramic."

18.     While panoramic sunroofs are aesthetically pleasing, and thus command a premium price, they also pose new and significant engineering challenges. Replacing metal roofs and small glass sunroofs with large plates of glass requires precision in the strengthening, attachment, and stabilization of the glass.

19.     Like other manufacturers, Volkswagen has failed to meet these engineering challenges, as is evidenced by its own panoramic sunroofs' propensity to spontaneously shatter (referred to herein as "the Defect"). In December of 2014, Volkswagen issued a safety recall of a limited set of model years of its vehicles with defective panoramic sunroofs.

20.     The panoramic sunroof shattering events are so powerful that startled drivers compare it to the sound of a gunshot, after which glass fragments often rain down upon the occupants of the vehicle, sometimes while driving at highway speeds.

21.     For Volkswagen vehicles, at least 60 owners of vehicles with defective sunroofs have reported to the National Highway Traffic and Safety Administration ("NHTSA") that their sunroofs have spontaneously exploded or shattered. A sampling of these consumer complaints is attached as Exhibit 1 (these consumer complaints were accessed at http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues on September 25, 2017).

22.     Volkswagen knew or should have known about the Defect since at least 2010 when a NHTSA complaint was filed regarding the Defect in the Volkswagen Golf. *See* Exhibit 1.

23.     On or before May 12, 2014, Volkswagen knew or should have known about the Defect because NHTSA opened an investigation of Kia Motor Company vehicles whose panoramic sunroofs were exhibiting the same defect (https://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM455160/INOA-EA14002-1938.PDF, accessed on June 15, 2017). Upon information and belief, automobile manufacturers

4

monitor NHTSA investigations not only for their own vehicles but also for investigations of vehicles with similar features.

24.     On April 14, 2016, NHTSA expanded its investigation inquiries as to Volkswagen and other manufacturers regarding the Defect. *See* Exhibit 2 (Nat'l Highway Traffic Safety Admin., *EA12-002: General Order Directed to Motor Vehicle Manufacturers* (April 14, 2016), available at    http://static.nhtsa.gov/odi/inv/2014/INLM-EA14002-63477.pdf    (accessed   on September 25, 2017)). Volkswagen's responses are not yet available on the NHTSA website.  The investigation remains open.

25.     Despite knowing of the Defect, Volkswagen refuses to warn drivers of the danger and continues to sell and lease the vehicles with defective panoramic sunroofs without disclosing the Defect to consumers.

26.     Plaintiff seeks relief for himself and a class of all other consumers who purchased or leased Volkswagen vehicles with panoramic sunroofs, or in the alternative all Colorado consumers, to redress the harm they suffered as a result of the Defect.  Plaintiff requests an award of damages and appropriate equitable relief, including an order enjoining Volkswagen from continuing to sell vehicles with the Defect and requiring Volkswagen to adequately disclose the Defect to current Volkswagen owners and repair their vehicles.

### III. SUBSTANTIVE ALLEGATIONS

**A.      The Volkswagen Panoramic Sunroof Defect**

27.     Volkswagen designs, manufactures, markets, and distributes automobiles in the United States under the Volkswagen brand name. The Volkswagen automobile models that are the subject of this complaint (including Electric, Hybrid, GTi, SportWagen, and Alltrack Models) are:

5

the Volkswagen Beetle 2013-present[1], Volkswagen CC 2009-2017, Volkswagen Eos 2008-2014, Volkswagen Golf 2010-present, Volkswagen Jetta 2009-present, Volkswagen Passat 2009-present, Volkswagen Tiguan 2011-present, and Touareg 2005-present with factory-installed panoramic sunroofs (collectively "Class Vehicles"). Plaintiffs anticipate amending the definition of the Class Vehicles when Volkswagen identifies in discovery all of the vehicles it manufactured and sold with the optional panoramic sunroof.

28.    Owners and lessees of Class Vehicles are referred to as "Class Members" or "the Class."

29.    Starting in at least the 2002 model year, Volkswagen introduced vehicles with an optional upgrade of a factory-installed panoramic sunroof. The panoramic sunroof designs in all of the Class Vehicles are substantially similar in design and manufacture.

30.    Volkswagen generally markets the panoramic sunroofs as a luxury upgrade, available even in its lower-end cars like the Tiguan.[2]  The cost to upgrade the sunroof, depending upon the vehicle model, ranges from over one thousand to several thousand dollars. The actual material cost of the panoramic sunroofs is relatively low, making the option one of the most profitable features in the automotive industry.

31.    The Volkswagen brochure for the 2015 Volkswagen Touareg describes its panoramic power sunroof as giving a whole new meaning to the term "open road":

---

[1] Excluding certain model year 2013-2015 Beetle vehicles manufactured June 13, 2013, to July 3, 2014 included in Volkswagen's safety recall with NHTSA Campaign Number: 14V-658. *See* Exhibit 3.

[2] Bell, Lyndon. "Affordable SUVs with Panoramic Sunroofs."*Autobytel*, www.autobytel.com/sport-utility-vehicles/car-buying-guides/-affordable-suvs-with-panoramic-sunroofs-130635/.  This website was last visited on October 5, 2017.



**Available panoramic power sunroof**

You have to see it to believe it. The panoramic,
power-sliding sunroof gives a whole new meaning to the
term "open road."

    32.    Panoramic sunroofs, made of tempered or laminated glass depending on the manufacturer, attach to tracks, which in turn are set within a frame attached to the vehicle. Most panoramic sunroofs, including those offered by Volkswagen, include a retractable sunshade. Examples of panoramic sunroofs appear in the photographs below.

**2016 Volkswagen Touareg Panoramic Sunroof[3]**

---

[3] http://asksouthcentrevw.com/2016-volkswagen-touareg-reviews/. This website was last visited on October 5, 2017.



**2017 Volkswagen Tiguan Sport Turbo 4Motion Panoramic Sunroof**[4]



**2010 Volkswagen Jetta SportWagen TDI Panoramic Sunroof**[5]

---

[4] https://www.volkswagenofgrandblanc.com/new-Grand+Blanc-2017-Volkswagen-Tiguan-Sport+Turbo+4Motion-WVGUV7AX0HK029128. This website was last visited on October 5, 2017.

[5] http://www.automoblog.net/2010/02/17/2010-vw-jetta-sportwagen-tdi-review/. This website was last visited on October 5, 2017.



33.     Panoramic sunroofs present manufacturing, design, and safety challenges for manufacturers because the large plates of glass take up much of the surface area of the vehicle's roof. The design and manufacturing defects described herein with respect to the Volkswagen panoramic sunroofs outline how the shattering occurs in ways that are unknown and dangerous to the driver and occupants.

34.     One particular challenge is the material make-up of the glass. Whereas some manufacturers, such as Volvo and Honda, have used a *laminated* glass, other manufacturers, such as Toyota, Mercedes, Nissan, Kia, Hyundai, and Volkswagen, have opted to install panoramic sunroofs with *tempered* glass that feature large areas of ceramic paint.

35.     In the automotive industry, tempered or toughened glass is generally made in the same manner by all manufacturers: a piece of annealed glass is shaped and cut as to original equipment manufacturing ("OEM") standards. The glass is heated and then rapidly cooled, i.e., tempered. The tempering process creates an outer layer of glass that is compressed (similar to being shrink-wrapped) around a middle core of the glass that is constantly pressing outwards

creating tension or tensile force. The compressive and tensile layers create a stronger piece of glass as compared to non-tempered glazing. However, if the compressive layer is compromised the entire piece of glass fails catastrophically and often explosively.

36.     Problems with panoramic sunroofs are compounded by Volkswagen's use of thinner glass. Car makers, including Volkswagen, are using thinner glass in panoramic sunroofs to save weight and improve vehicle fuel efficiency. Thinner glass, however, is very difficult to temper properly (especially when thicknesses are 4 mm or less) as the compressive layers are thinner, increasing the probability of catastrophic failure.

37.     Additionally, the tempered glass used in the Class Vehicles features a ceramic paint applied prior to tempering. Automotive ceramic paint or ceramic enamels are composed of fine powders of low melting point glass frit, pigments, and other additive oxides, sulfides, or metals. After application of the ceramic enamel, the glass is then tempered, as described above. These ceramic enamels are applied on the top around the edges of panoramic sunroof glazing and serve aesthetic and functional purposes. The ceramic paint area appears as a "black band" along the edge of the glass.

38.     Ceramic enamels are known "adulterants" and significantly weaken the structural strength and integrity of the Class Vehicles' tempered panoramic sunroof glazing. Among other factors, ceramic enamels compromise glass strength because: (1) the enamels have different thermal expansion coefficients than the glass substrates (the glass and the paint expand at different rates), resulting in residual stress between the ceramic enamel and the glass substrate; and (2) the glass frit will ion exchange with the glass substrate lessening or eliminating the compressive layer above the tensile region thereby significantly weakening it.

39.     The ceramic paint area is relatively small in conventional sunroofs, but ceramic

10

paint areas have become larger with the advent of panoramic sunroofs resulting in the glass becoming progressively weaker, more likely to spontaneously burst and, for the unsuspecting driver and passengers, more dangerous.

40.     In 2013, the Korea Automobile Testing & Research Institute ("KATRI") concluded that the enamel used for ceramic paint areas in panoramic sunroofs, like those installed in Volkswagen vehicles, impairs the strength of the glass, making it not only less durable than the usual toughened glass, but also less durable than ordinary glass. For an example of these findings, see Lee Kwang-bum, et al., *A Study On Toughened Glass Used For Vehicles And Its Testing Methods,* No. 15-0152 available at https://www-esv.nhtsa.dot.gov/Proceedings/24/files/24ESV-000152.PDF (accessed on June 15, 2015).

41.     Following KATRI's report, an Informal Working Group on Panoramic Sunroof Glazing was established by the United Nations Economic Commission for Europe to evaluate the safety of panoramic sunroofs. The Working Group is chaired by a representative from KATRI and is considering whether to amend the UN regulations on safety glazing. At the end of June 2016, the Working Group confirmed that conventional automotive glass enamels weaken the mechanical strength of panoramic sunroof glazing. This working group's findings and regulatory recommendations are available at https://globalautoregs.com/groups/93.

42.     Another challenge presented by the panoramic sunroofs is the need to ensure the sunroof glass is fastened to the vehicle with a sufficient degree of tightness. Volkswagen and other manufacturers fasten the sunroof in a manner that reduces road and wind noise and makes them less susceptible to rainwater incursion. At the same time though, flexing and vibration caused by ordinary driving imposes stress on the sunroof, ultimately causing the glass to shatter. In the Volkswagen models at issue, the compromised tempered glass cannot withstand the pressures and

flexing that the sunroof frame and vehicle demand, even when the vehicle is brand new or is parked and sitting still.

**B.      Consumer Complaints Reveal the Magnitude and Seriousness of the Defect**

43.      Below are just a few examples of the numerous complaints regarding Volkswagen sunroofs lodged with NHTSA. (*See also* Exhibit 1.) Few, if any, of the drivers who filed reports with the federal government reported that their panoramic sunroof shattered because of an object striking their vehicle. In contrast, many of the drivers report that their panoramic sunroofs spontaneously shattered while the vehicle was in motion. The complaints are viewable online at https://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues (accessed on August 22, 2017).[6]

Date Complaint Filed:  02/28/2017
Date of Incident:  02/27/2017
Vehicle Make Model Year(s): Volkswagen Golf 2015

> **Summary:**  THE PANORAMIC SUNROOF ON MY 2015 VW GOLF SE SPONTANEOUSLY EXPLODED WHILE DRIVING APPROXIMATELY 60 MPH ON THE FREEWAY AT APPROXIMATELY 9:15 PM ON 2/27/2017 ON HIGHWAY 880 IN OAKLAND, ABOUT 1/2 MILE SOUTH OF THE ORACLE COLISEUM. NO CARS WERE NEAR ME AND I WAS NOT UNDER A BRIDGE, THUS NO EVIDENCE THAT THE SUNROOF WAS STRUCK BY AN EXTERNAL OBJECT. THERE WAS ALSO NO VISIBLE EVIDENCE OF DAMAGE TO THE GLASS PRIOR TO ENTERING THE VEHICLE, I CHECK EVERY TIME I BUY GAS. THE GLASS SHATTERED SUDDENLY IN A LOUD EXPLOSION THAT SOUNDED LIKE A GUNSHOT AND SHARDS WERE SCATTERED THROUGHOUT THE INTERIOR OF THE VEHICLE AND COVERED MYSELF AND MY PASSENGER - ALTHOUGH MOST OF THE SHARDS BLEW OUTWARD AND LANDED ON THE ROAD. THE EXPERIENCE WAS EXTREMELY FRIGHTENING AND COULD HAVE CAUSED SERIOUS INJURIES. LUCKILY I WAS ABLE TO MAINTAIN CALM AND SLOWLY DRIVE OFF THE FREEWAY RATHER THAN JERKING THE WHEEL WHEN THE EXPLOSION HAPPENED. THE ONLY INJURIES ARE EMOTIONAL AND 12 HOURS LATER I AM STILL FINDING SMALL SHARDS OF GLASS ON MY PERSON (HAIR, INSIDE MY MOUTH AND NOSE, ON MY CLOTHES).
> [NHTSA ID Number:  10957577]

Date Complaint Filed:  02/27/2017
Date of Incident:  02/27/2017
Vehicle Make Model Year(s): Volkswagen Tiguan 2016

> **Summary:**  WHILE DRIVING ON THE HIGHWAY DURING RUSH HOUR THE SUNROOF SPONTANEOUSLY SHATTERED. THE SUNROOF WAS CLOSED AND THE CLOTH SHIELD WAS TUCKED AWAY. IT SOUNDED LIKE A GUNSHOT AND DEAFENED MY EARS FOR ABOUT 5 MINUTES. I THOUGHT SOMEONE FIRED A GUN OR A NEARBY CAR GOT INTO AN ACCIDENT SINCE I FELT NO IMPACT OTHER THAN SOUND. BECAUSE I

---

[6] These customer complaint summaries are reproduced verbatim, and not corrected for any grammar, spelling, or punctuation errors included in the original consumer description.

WAS DRIVING I WAS EXTREMELY STARTLED WHEN I LOOKED UP AND SAW AN OPEN WINDOW AND GLASS HAD FALLEN ALL OVER ME. IT HAD HAPPENED SO QUICKLY. I TRIED TO PULL OVER IN THE NEAREST EXIT AND WHILE GETTING OUT OF THE CAR AND MANEUVERING OUT, HAD CUT MYSELF SEVERAL TIMES.
[NHTSA ID Number:  10957453]

Date Complaint Filed: 11/21/2016
Date of Incident:  11/16/2016
Vehicle Make Model Year(s): Volkswagen GTI 2012

**Summary:** SUNROOF EXPLODED LIKE A GUN SHOT WHILE TRAVELING ON THE FREEWAY 60 MPH. HAD JUST ENTERED EXPRESS LANE AND FOUND IT VERY DISORIENTING AND DISTRACTING SINCE I THOUGHT I HAD BEEN SHOT AT. HAD TO CHECK ALL THE WINDOWS AND MY PERSON FOR GLASS OR INJURY BEFORE I LOOKED UP AND SAW THE LARGE HOLE IN THE SUNROOF. SUNROOF GLASS APPEARS TO BE PROTRUDING OUTWARD - LIKE IT WAS PUSHED OUT FROM THE INTERIOR. NOT ALL THE GLASS CHIPS RECOVERED INSIDE THE CAR APPEAR TO EQUAL THE AREA OF THE HOLE IN THE SUNROOF.
[NHTSA ID Number:  10927115]

Date Complaint Filed: 05/31/2016
Date of Incident:  05/28/2016
Vehicle Make Model Year(s): Volkswagen Touareg 2011

**Summary:** WHILE DRIVING AT APPROXIMATELY 60MPH ON A SMOOTH TWO LANE WIDE HIGHWAY THE FRONT SUNROOF PANEL (PANORAMIC) SHATTERED. THERE WERE NO OTHER VEHICLES ON THE ROAD, NO OVERPASSES AND NO TREES ABOVE. IT WAS AROUND 65-70 DEGREES FAHRENHEIT. IT WAS NOT HAILING OR RAINING AT THE TIME. NO OBJECTS WERE RECOVERED FROM INSIDE OF THE VEHICLE. THE GLASS APPEARED TO HAVE BROKEN UPWARDS INSTEAD OF INWARDS. FIANCÉ AND TWO DOGS (TRUNK AREA) WERE INSIDE OF THE CRUCIBLE. GLASS CAUSED VERY MINOR CUTS. VEHICLE RECENTLY DETAILED AND ALSO CLEANED BY MYSELF. NO ROCK CHIPS PRESENT IN SUNROOF GLASS. NO VISIBLE CRACKS PRIOR TO INCIDENT.
[NHTSA ID Number:  10871581]

Date Complaint Filed: 12/18/2015
Date of Incident:  12/11/2015
Vehicle Make Model Year(s): Volkswagen Passat 2014

**Summary:** EXPLODING SUNROOF WHILE DRIVING 55 MPH IN NORMAL WEATHER CONDITIONS; GLASS WAS PUSHED OUTWARD.
[NHTSA ID Number:  10811216]

Date Complaint Filed: 11/28/2014
Date of Incident:  11/26/2014
Vehicle Make Model Year(s): Volkswagen Passat 2010

**Summary:** WHILE DRIVING ON THE HIGHWAY WITH THE SUNROOF CLOSED. OUT OF THE BLUE AND UNPROVOKED - THE SUNROOF EXPLODED. IT WAS NOT HIT BY ANYTHING TO CAUSE THIS. THE MAJORITY OF THE GLASS FLEW OUT, BUT HAD THE INNER PLASTIC SUNROOF MATERIAL BEEN OPEN IT CERTAINLY COULD HAVE INJURED THOSE INSIDE. ADDITIONALLY OVER THE COURSE OF THE NEXT FEW DAYS I DID FIND DARK GLASS SHARDS IN MY HAIR THAT HAD CLEARLY COME FROM THE SUNROOF. MY STORY IS LUCKY, BUT EASILY COULD HAVE ENDED IN INJURY TO DRIVER FROM THE GLASS OR FROM INJURIES TO OTHERS ON THE ROAD CAUSED BY AN ACCIDENT PROMPTED BY THE SHOCK OF UNPROVOKED SHATTERING GLASS TO THE DRIVER. THE CAR IS NOT VERY OLD (2010) AND THE SUNROOF IS CERTAINLY NOT OVERUSED. THIS ABSOLUTELY CAN'T BE THE USERS' FAULT. *TR

[NHTSA ID Number:  10661192]

Date Complaint Filed: 09/15/2014
Date of Incident:  08/30/2014
Vehicle Make Model Year(s): Volkswagen Jetta 2010

**Summary:** WHILE TRAVELING ON I-96 WEST TRAVELING AT 70MPH THE SUNROOF WHICH WAS CLOSED AT THE TIME SUDDENLY EXPLODED SENDING SHARDS OF GLASS EVERYWHERE. IT SOUNDED LIKE A GUN WENT OFF IN THE VEHICLE. I WAS VERY FORTUNATE THAT THE SUNROOF CURTAIN WAS CLOSED AT THE TIME WHICH CONTAINED MOST OF THE GLASS SHARDS. THIS IS A SERIOUS ISSUE THAT SHOULD BE LOOKED INTO. THERE WAS NOBODY ELSE ON THE HIGHWAY AROUND ME SO THERE IS NO POSSIBILITY THAT THIS WAS A STONE OR OBJECT FROM ANOTHER VEHICLE. THE TEMPERATURE OUTSIDE WAS 92 DEGREES F AND I HAD THE DRIVERS SIDE WINDOW OPEN APPROXIMATELY 50%. THIS WAS A TERRIBLE EXPERIENCE THAT I WAS LUCKY TO WALK AWAY FROM WITHOUT PHYSICAL INJURY. HOWEVER, I WILL NOT DRIVE THIS CAR AGAIN WITHOUT AN EXPLANATION! VERY DANGEROUS CAR!!!! *TR

[NHTSA ID Number:  10633180]

Date Complaint Filed: 01/27/2014
Date of Incident:  01/22/2014
Vehicle Make Model Year(s): Volkswagen Passat 2012

**Summary:** SUNROOF EXPLODED WHILE DRIVING DOWN FREEWAY AT NIGHT. NO CARS IN FRONT OF ME TO KICK UP A ROCK, NO OVERPASSES FOR SOMETHING TO BE THROWN FROM. COMPLETELY RANDOM EXPLOSION. I HEARD A LOUD GUNSHOT SOUND, THEN SMALL GLASS PIECES RAINED DOWN ON MY HEAD AND FACE AND ALL OVER MY THREE CHILDREN IN THE BACK SEAT. LOOKED UP AND HEARD THE SOUND OF WIND AND SAW THE HOLE IN MY SUNROOF. SO FAR THE DEALERSHIP HAS SAID THEY WON'T REPLACE IT UNDER WARRANTY AND I HAVE REACHED OUT TO VW DIRECTLY AND THEY ARE DENYING THE CLAIM AS WELL. THIS IS ABSOLUTELY A MANUFACTURING DEFECT AND THEY ARE NOT STANDING BY THEIR PRODUCT. THEY ARE LUCKY NOBODY WAS INJURED OR KILLED IN AN ACCIDENT. HOPEFULLY THAT DOESN'T HAVE TO HAPPEN FOR THEM TO TAKE RESPONSIBILITY. *TR

[NHTSA ID Number:  10561722]

Date Complaint Filed:  04/11/2013
Date of Incident:  04/11/2013
Vehicle Make Model Year(s): Volkswagen Jetta 2009

**Summary:** SUNROOF EXPLODED UPWARDS, SHATTERED INTO MANY TINY PIECES. *TR

[NHTSA ID Number:  10505914]

Date Complaint Filed: 01/16/2011
Date of Incident:  01/06/2011
Vehicle Make Model Year(s): Volkswagen Jetta 2002

**Summary:** I HAD DRIVEN THE CAR APPROXIMATELY 30 MILES WHEN, WHILE AT A STOP LIGHT THE SUNROOF EXPLODED OUTWARD. THE PANE REMAINED IN ONE PIECE, BUT WAS SHATTERED AND SMALL SHARDS OF GLASS FELL DOWN ON ME. THE TEMP OUTSIDE WAS 36 DEGREES, NO VEHICLE PASSED BY, THERE WAS NO POINT OF IMPACT, NO SEVERE TEMPERATURE CHANGE, NO CHIP OR CRACK IN THE GLASS PRIOR TO THE INCIDENT. THE VEHICLE IS KEPT IN A GARAGE AND THERE WAS NO PRECIPITATION (SNOW OR RAIN) ON THAT DAY. VW CLAIMS NO FAULT OF THEIRS, BUT ADMITS TO A RECALL ON A TROUGH THAT LEADS FROM THE SUNROOF DOWN THROUGH THE DOORS THAT'S KNOWN TO CLOG WITH DEBRIS. VW WILL NOT REPAIR AT THEIR COST.

[NHTSA ID Number:  10377743]

14

**C.     Volkswagen's Knowledge of the Defect**

44.     A survey of driver complaints shows that Volkswagen sunroofs often shatter within weeks or months of purchase, and NHTSA was informed of this problem in Volkswagen vehicles as early as 2010. *See* Exhibit 1.

45.     Like other automobile manufacturers, Volkswagen monitors NHTSA for information on emerging problems with its vehicles.

46.     On or before May 12, 2014, NHTSA opened an investigation of the panoramic sunroofs failures, initially focused on 2011-2013 Kia Sorento panoramic sunroofs. *See* Nat'l Highway Traffic and Safety Admin., U.S. Dep't of Transp., Office of Defects Investigation: No. EA    14-002    (Opened:    05/12/2014),    https://www-odi.nhtsa.dot.gov/owners/ SearchResults;jsessionid=1TZpY0HQcwJvFCWzP6l6GkpnLFsLJbB0Qv4TY1TTLLjYyCX3 WbP1052099763 (accessed on June 15, 2017). The investigation was soon expanded to other vehicle manufacturers, including Volkswagen.

47.     As part of NHTSA's open investigation into the panoramic sunroof shattering safety issue, on April 14, 2016, NHTSA sent a letter to Volkswagen requesting information about its vehicles with panoramic sunroofs, requesting Volkswagen identify all Volkswagen panoramic roofs and complaints of shattered roofs for model years 2006-2016. *See* Exhibit 2.

48.     The response from Volkswagen was due on May 16, 2016, but has not yet been posted on the NHTSA website.

49.     On or around October 20, 2014, Volkswagen notified the NHTSA of its intent to begin a safety recall campaign on December 14, 2014. Volkswagen's campaign targeted owners of Volkswagen Beetles manufactured between June 13, 2013 and July 3, 2014, offering to replace the sunroof, free of charge, due to the glass sunroofs in the affected vehicles having the potential

15

to break when the vehicles are operated over a hard road surface or strike a pothole. NHTSA's letter to Volkswagen, acknowledging the notice of the recall is attached as Exhibit 3.

50.     Upon information and belief, Volkswagen is also aware that other manufacturers whose vehicles suffered from similar shattering problems have voluntarily initiated safety recalls to notify drivers of the danger and repair the sunroofs free of cost.

**D.     The Dangers Posed to Class Occupants**

51.     NHTSA, KATRI, and responsible automobile manufacturers have acknowledged that the spontaneous failure of panoramic sunroofs endangers drivers, passengers, and others on the road. A panoramic sunroof is an expensive upgrade option that costs thousands of dollars to replace. A reasonable person considering whether to purchase or lease a Volkswagen vehicle would want to be informed about the panoramic sunroof defect before deciding whether to spend the additional money.

52.     When panoramic sunroofs shatter because of the defect while the Class Vehicles are occupied, occupants report a sudden, unexpected and extremely loud noise, followed by shards of glass raining down onto the driver and passengers. Drivers report that the falling shards of glass have injured them, their passengers and have caused damage to their Class Vehicles. Drivers have also reported a number of near-miss accidents that occurred after they were startled or distracted because the sunroof shattered while the vehicle was in motion. Both Volkswagen and NHTSA have received reports of injuries caused by sunroof failure. *See* Exhibit 1.

53.     Volkswagen has publicly recognized the safety risk. When Volkswagen initiated its safety recall for certain vehicles with shattering panoramic sunroofs, it acknowledged that drivers "could be injured by falling glass," and that "[i]f the glass panel were to break while the vehicle is in motion, it could cause the driver distraction, increasing the risk of a crash." *See* Press

16

Release, Volkswagen of America, Inc., *Volkswagen Issues Voluntary Recall* (Dec. 7, 2014), http://media.vw.com/release/856/ (accessed on June 15, 2017).

54.     Other manufacturers have recognized the safety risks. When Hyundai initiated a recall of some of its vehicles, it too acknowledged that the shattering of panoramic sunroofs "relates to motor vehicle safety," including by posing a risk of injury to vehicle occupants. In connection with the Hyundai recall, NHTSA wrote that the breaking of the panoramic sunroof could lead "to personal injury or a vehicle crash." *See* Letter from Robert Babcock, Hyundai America Technical Center, Inc. (HATCI)'s Director of Certification and Compliance Affairs, to Nancy Lewis, Associate Administrator for Enforcement at the NHTSA, regarding "Defect Information Report" (December 6, 2012), https://static.nhtsa.gov/odi/rcl/2012/RCDNN-12V568-7763.pdf?_ga=1.68163031.711047123.1487811501 (accessed on June 15, 2015).

55.     In connection with an Audi recall, NHTSA wrote that "should the sunroof's glass break while the vehicle is in use, the falling glass could cut and injure the driver or passengers [and] could also distract the driver, increasing the risk of a crash."

56.     KATRI concluded that the sudden shattering of a panoramic sunroof while driving may cause "abrasions due to shattered glass" and also cause the "risk of secondary accidents."

57.     In December of 2012, KATRI launched an investigation that culminated in November 2013 when it met with numerous car manufacturers in Seoul, South Korea, announcing its finding that the ceramic tint in panoramic sunroofs substantially weakened the glass and compromising its safety. KATRI recommended widespread recalls.

**E.     Volkswagen Refuses to Warn Drivers**

58.     Despite the high number of complaints and the danger posed by the defect, Volkswagen continues to conceal its existence from current owners of Class Vehicles and potential

17

customers alike. Volkswagen has not warned consumers at the point of sale/lease or when drivers of Class Vehicles who have experienced a shattered sunroof bring their vehicles in for repairs, making no effort to alert consumers of the risk. Volkswagen knows of the defect yet continues to profit from the sale and lease of Class Vehicles to unwitting customers.

59.     Volkswagen conceals the defect even though it knows it is not reasonably discoverable by consumers unless they experience a failure and are exposed to the attendant safety risks.

60.     Volkswagen remains silent even as it continues to receive complaints from concerned drivers of Class Vehicles and the NHTSA investigators.

61.     As a result of Volkswagen's inaction and silence, consumers are unaware that they purchased or leased a Class Vehicle which has a defective sunroof, and continue to drive these unsafe Class Vehicles. In addition, consumers who have experienced a failure and bring their Class Vehicles to a dealership for repairs are not told that identically defective sunroofs are installed as replacements in their Class Vehicles.

62.     Volkswagen has voluntarily initiated a safety recall on a limited set of its vehicles with the defect, notifying drivers of the danger and offering to repair the sunroofs free of cost (*See* Exhibit 3), yet has failed to extend this offer to all Class Vehicles possessing the same defect.

**F.      Volkswagen's Deceptive Warranty Practices**

63.     The relevant terms of the Volkswagen brand Class Vehicles' warranties are substantially the same: they are backed by a bumper-to-bumper warranty that lasts for six years or 72,000 miles, whichever comes first.

64.     Plaintiff and/or Class Members experienced damage from the Defect within the warranty periods of their vehicles. Plaintiff and/or Class Members reasonably expected that any

18

and all damage that resulted from the sunroof defect would be covered under the warranty, and that they would not be charged anything for such repairs.

65.     Volkswagen has systematically denied coverage with respect to the defective sunroofs. Plaintiff and Class Members have been forced to incur substantial repair bills and other related damages, including being forced to make claims under their automotive insurance policies and incurring substantial deductibles.

### V. PLAINTIFF'S EXPERIENCES

66.     In February of 2014, Plaintiff Jonathan David and his wife Valerie purchased a brand new 2014 Volkswagen Touareg from McDonald VW in Littleton, Colorado for the purchase price of $51,445. Plaintiff's vehicle included Volkswagen's panoramic sunroof with a movable front panel and fixed back panel.

67.     Prior to buying his Touareg, Plaintiff did extensive research for a new car by reading magazine reviews, speaking with owners, and questioning VW service technicians. Plaintiff's prior experience with Volkswagen vehicles also convinced him to purchase the Touareg.

68.     The panoramic sunroof feature on the Touareg was a huge selling point for Mr. David. The sunroof was the deciding factor in his decision to choose the "Lux" option package.

69.     At approximately 7:45 a.m. on January 7, 2016, Mr. David was driving the Volkswagen, alone, heading south on I-25 approximately one mile north of the Meadows exit in Castle Rock, Colorado. It was a cold, snowy morning and he was traveling around 70 mph in light traffic. The nearest vehicle was over one thousand feet in front of him and nothing was observed being thrown or falling off of it or anything else on or near the highway. Mr. David had been driving for about thirty to forty minutes when he heard a sound so loud he initially thought it was a gunshot or blowout. Mr. David was startled and swerved slightly to the right, almost hitting the

highway barrier. He felt glass falling on him and that the temperature in the vehicle was decreasing. He looked up to see a hole in the sunroof and then quickly leaned forward to avoid any glass falling into his eyes. Mr. David suffered minor scratches to his back and neck from the falling glass. With no adequate shoulder to pull the vehicle onto, and nothing to cover the hole with, Mr. David reduced his speed to about twenty-five miles per hour, turned on his hazards, and drove the vehicle back to the garage of his home. Upon exiting the vehicle, Mr. David noticed the sunroof glass had blown upwards with some pieces of glass caught in the rear section of the panoramic sunroof. Other pieces of glass had fallen into the back seat, front seats, and onto the center console.

70.     Below are photographs of the shattered sunroof in Mr. David's 2014 Touareg.







21

61.     Mr. David called VW roadside support which towed the vehicle to Al Serra VW in Colorado Springs. The service manager, Rich Frizell, inspected the damage and estimated the repairs to cost approximately $1400. Mr. David's request to have the dealership pay for the repairs was denied. He telephoned Volkswagen customer service who informed him that they did not need to see any photos of the damage to decide they were going to stand behind the dealership's decision. He filed a claim through his insurance company, Esurance, which covered the repairs as a comprehensive loss.

62.     Mr. David paid his insurance deductible of $500 for the repairs.

63.     Had Volkswagen disclosed the panoramic sunroof defect, Mr. David would not have purchased the vehicle or would have paid substantially less for it given the safety defect. In addition, he would not have suffered the economic damages that he sustained from the sunroof failure. Mr. David did not receive the benefit of the bargain. Volkswagen failed to disclose the Defect and the attendant risks associated with the Defect at the point of sale or otherwise.

## VI. CLASS ACTION ALLEGATIONS

64.     Pursuant to Fed. R. Civ. P. 23, Plaintiff Jonathan David brings this action individually and on behalf of all others similarly situated as a member of the following proposed Nationwide and Colorado classes (collectively, the "Classes"), on their federal and state claims as purchasers and lessees of "Class Vehicles." Class Vehicles include all models below that are equipped with factory-installed panoramic sunroofs that are substantially similar in design and manufacturing processes:

- 2013-present model year Volkswagen Beetle vehicles[7];

---

[7] Excluding certain model year 2013-2015 Beetle vehicles manufactured June 13, 2013, to July 3, 2014 included in Volkswagen's safety recall with NHTSA Campaign Number: 14V-658. *See* Exhibit 3.

- 2009-2017 model year Volkswagen CC vehicles;

- 2009-2014 model year Volkswagen Eos vehicles;

- 2010-present model year Volkswagen Golf vehicles;

- 2009-present model year Volkswagen Jetta vehicles;

- 2010-present model year Volkswagen Passat vehicles;

- 2011-present model year Volkswagen Tiguan vehicles; and

- 2009-present model year Volkswagen Touareg vehicles;

Nationwide Class:

All persons and entities residing in the United States, including its territories, who purchased or leased a Class Vehicle.

Colorado Class:

All persons and entities residing in Colorado who purchased or leased a Class Vehicle in Colorado.

Excluded from the proposed classes are Volkswagen; any affiliate, parent, or subsidiary of Volkswagen; any entity in which Volkswagen has a controlling interest; any officer, director, or employee of Volkswagen; any successor or assign of Volkswagen; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff; and anyone who purchased the Class Vehicle for the purpose of resale.

65.    Members of the proposed classes are readily ascertainable because the class definitions are based upon objective criteria.

66.    Numerosity. Volkswagen sold many thousands of Class Vehicles, including a substantial number in Colorado. Members of the proposed classes likely number in the thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by public notice (if deemed necessary or

appropriate by the Court).

67.     Commonality and Predominance. Common questions of law and fact exist as to all proposed members of the Classes and predominate over questions affecting only individual class members. These common questions include:

(a)     Whether the panoramic sunroofs in the Class Vehicles have a propensity to spontaneously shatter;

(b)     Whether Volkswagen knew or should have known that its panoramic sunroofs have a propensity to spontaneously shatter, and if so, when Volkswagen discovered this;

(c)     Whether the knowledge of this propensity to shatter would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

(d)     Whether Volkswagen failed to disclose to and concealed from potential customers the existence of the sunroofs' propensity to spontaneously shatter;

(e)     Whether Volkswagen breached its warranty obligations;

(f)     Whether the Court may enter an injunction requiring Volkswagen to notify owners and lessees about the panoramic sunroofs' propensity to spontaneously shatter;

(g)     Whether the Court may enter an injunction requiring Volkswagen to cease its practice of replacing shattered panoramic sunroofs with identically defective replacement sunroofs;

(h)     Whether Volkswagen had a duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Vehicles and the sunroof defect;

(i)     Whether Volkswagen's conduct, as alleged herein, violates the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*;

(j)     Whether Volkswagen's conduct, as alleged herein, violates the consumer

protection laws of Colorado; and

(k)     Whether Volkswagen's conduct, as alleged herein, entitles Plaintiff and the Class Members to restitution under the laws of their respective states.

68.     Typicality. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the members of the proposed classes all purchased or leased Class Vehicles with panoramic sunroofs that have a propensity to spontaneously shatter, giving rise to substantially the same claims. As illustrated by class member complaints, some of which are excerpted above, each vehicle model included in the proposed class definitions has a panoramic sunroof with the same Defect.

69.     Adequacy. Plaintiff is an adequate representative of the proposed classes because his interests do not conflict with the interests of the members of the classes he seeks to represent. Plaintiff has retained counsel who are competent and experienced in complex class action litigation, and will prosecute vigorously on Class Members' behalf.

70.     Superiority. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Volkswagen economically feasible. Even if Class Members themselves could afford individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective sunroofs, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

71.     In the alternative, the proposed classes may be certified because:

(a)     the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Volkswagen;

(b)     the prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members, or which would substantially impair their ability to protect their interests; and

(c)     Volkswagen acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

## VII. TOLLING OF THE STATUTES OF LIMITATIONS

72.     Discovery Rule. Plaintiff's and Class Members' claims accrued upon discovery that the panoramic sunroofs installed in their Class Vehicles were prone to spontaneous failure. While Volkswagen knew, and concealed, the fact that the panoramic sunroofs installed in the Class Vehicles have a defect that causes spontaneous failure, Plaintiff and Class Members could not and did not discover this fact through reasonable diligence.

73.     Active Concealment Tolling. Any statutes of limitations are tolled by Volkswagen's knowing and active concealment of the fact that the panoramic sunroofs installed in the Class Vehicles suffered from the Defect. Volkswagen had a duty to disclose this defect and its consequent performance and safety problems to Plaintiff and Class Members because Volkswagen had knowledge of this defect and the defect was not known to nor easily discoverable by Plaintiff and Class Members. Despite its affirmative duty to disclose the nature and existence of this defect, Volkswagen kept Plaintiff and Class Members ignorant of vital information essential

to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff and Class Members. The details of Volkswagen's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff and Class Members could not have reasonably discovered the fact that the panoramic sunroofs installed in their Class Vehicles were defective.

74.    <u>Estoppel</u>. Volkswagen was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. At all relevant times, and continuing to this day, Volkswagen knowingly, affirmatively, and actively concealed the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. The details of Volkswagen's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff reasonably relied upon Volkswagen's active concealment. Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitation in defense of this action.

75.    <u>Equitable Tolling</u>. Volkswagen took active stops to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with defective panoramic sunroofs. The details of Volkswagen's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. However, Volkswagen's failure to disclose and active concealment of the defect amounts to bad faith and deception in and of itself. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Volkswagen fraudulently concealed its above-described wrongful acts. Should such tolling be necessary, therefore, all applicable statutes

of limitation are tolled under the doctrine of equitable tolling.

## VIII. CLAIMS FOR RELIEF

## COUNT 1

**Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.***

**(Plaintiff individually and on behalf of the Nationwide class and, alternatively, on behalf of the Colorado Class)**

76.     Plaintiff re-alleges- and incorporates by reference the preceding paragraphs as if fully set forth herein.

77.     The Magnuson-Moss Warranty Act, 15 U.S.C. §2301(d)(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

78.     Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

79.     Volkswagen is a "supplier" and "warrantor" within the meanings of 15 U.S.C. § 2301(4)-(5).

80.     Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

81.     Volkswagen provided a written warranty for each Class Vehicle. Volkswagen's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. §2301(7).

82.     Volkswagen breached the warranties by:

a.      Extending a 72 month/72,000 mile warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

b.      Selling and leasing Class Vehicles with panoramic sunroofs that were defective in material and workmanship, requiring repair or replacement within the warranty periods; and

c.      Refusing to honor the express warranties by not repairing or replacing the panoramic sunroofs free of charge.

83.     Plaintiff and Class Members own Class Vehicles that experienced spontaneous panoramic sunroof shattering during the period of warranty coverage.

84.     Despite Volkswagen's warranty, Volkswagen has not repaired or replaced these shattered panoramic sunroofs at no charge to the consumers. In fact, Volkswagen has denied claims made under its warranty(ies) by consumers whose Class Vehicle panoramic sunroof shattered.

85.     Volkswagen's breach of express warranty(ies) has deprived Plaintiff and Class Members of the benefit of the bargain.

86.     Plaintiff and Class Members have had sufficient dealings with either Volkswagen or its franchisees, representatives, and agents to establish any required privity of contract. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers and specifically of Volkswagen's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements with the Class Vehicles. The warranty agreements were designed for and intended to benefit the consumers only.

87.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value

of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

88.     Volkswagen has been afforded reasonable opportunity to cure its breaches of warranty, including when Plaintiff called to request repairs of the defective panoramic sunroof on his vehicle.

89.     Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have all sufficiently notified Volkswagen, thus providing Volkswagen with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

90.     Volkswagen has not cured the breach of warranty described above and continues to deny warranty coverage when Class Members present their vehicles for repair after their Class Vehicles' panoramic sunroofs spontaneously shattered.

91.     Resorting to any informal dispute settlement procedure or affording Volkswagen another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Volkswagen has repeatedly failed to disclose the panoramic sunroof defect or provide repairs at no cost and, therefore, has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford Volkswagen a reasonable opportunity to cure its breach of warranty(ies) is excused and/or has been satisfied.

92.     As a direct and proximate result of Volkswagen's warranty(ies) breach, Plaintiff and Class Members sustained damages and other losses to be determined at trial. Volkswagen's conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT 2

### Unjust Enrichment

### (Plaintiff individually and on behalf of the Nationwide Class, and alternatively, on behalf of the Colorado Class)

93.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

94.     As described above, Volkswagen sold Class Vehicles to Plaintiff and Class Members even though the panoramic sunroofs installed in those Class Vehicles were defective and posed a safety hazard. Volkswagen failed to disclose its knowledge of the sunroof defect and the defect's attendant risks-- at the point of sale or otherwise.

95.     Volkswagen unjustly charged and charges Plaintiff and Class Members for repairs and/or replacement of the defective panoramic sunroofs without disclosing that the defect is widespread and that the repairs do not address the root cause of the defect.

96.     As a result of its acts and omissions related to the defective sunroofs, Volkswagen obtained monies that rightfully belong to Plaintiff and Class Members.

97.     Volkswagen appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without knowledge of the defect, paid a higher price for their vehicles than those vehicles were worth. Volkswagen also received monies for vehicles that Plaintiff and Class Members would not have otherwise purchased had they been aware of the defect.

98.     It would be inequitable and unjust for Volkswagen to retain these wrongfully obtained profits.

99.     Volkswagen's retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

COUNT 3

**Violations of the Colorado Consumer Protection Act (Col. Rev. Stat. § 6-1-101, *et seq.*)**

**(Plaintiff individually and on behalf of the Colorado Class)**

100.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

101.   Plaintiff Jonathan David brings this action on behalf of himself and the Colorado Class.

102.   Defendant is a "person[s]" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, et seq.

103.   Plaintiff and Colorado Class Members are "consumers" for purposes of Col. Rev. Stat § 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

104.   The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Volkswagen engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses and benefits of the Class Vehicles that had the capacity or tendency to deceive Colorado Class Members; (2) representing that the Class Vehicles are of a particular standard, quality and grade even though Volkswagen knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Volkswagen at the time of advertisement or sale with the intent to induce Colorado Class Members to purchase, lease or retain the Class Vehicles.

105.   In the course of their business, Volkswagen concealed and suppressed material facts concerning the Class Vehicles. Volkswagen made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the Class Vehicles, particularly

with regard to the sustainability/fitness of the panoramic sunroofs. Specifically, Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Class Vehicles in order to intentionally and grossly defraud and mislead Plaintiff and Colorado Class Members concerning the safety of the panoramic sunroof feature.

106.    Defendants thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce. Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Colorado Class. Volkswagen knew or should have known that its conduct violated the Colorado CPA.

107.    Volkswagen owed Plaintiff a duty to disclose public health and safety risks and the devaluing of safety at Volkswagen, because Volkswagen made incomplete representations about the safety of the Class Vehicles, while purposefully withholding material facts from Plaintiff that contradicted these representations.

108.    Defendants concealed the defective panoramic sunroofs in the Class Vehicles resulting in a raft of negative publicity once the defects finally began to be disclosed. The value of the Class Vehicles has therefore greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, the Class Vehicles are now worth significantly less than they otherwise would be worth.

109.    Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Colorado Class Members, about the true quality of the Volkswagen brand, and the devaluing of the integrity at Volkswagen, and the true

value of the Class Vehicles.

110.    Plaintiff and the Colorado Class suffered ascertainable loss and actual damages as a direct and proximate result of Volkswagen's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Colorado Class Members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or – if the Vehicles' true nature had been disclosed and mitigated - would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

111.    Volkswagen had an ongoing duty to all Volkswagen customers to refrain from unfair and deceptive practices under the Colorado CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

112.    Plaintiff and Colorado Class Members risk irreparable injury as a result of Volkswagen's acts and omissions in violation of the Colorado CPA, and these violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

113.    As a direct and proximate result of Volkswagen's violations of the Colorado CPA, Plaintiff and Colorado Class have suffered injury-in-fact and/or actual damage.

114.    Pursuant to Colo. Rev. Sat. § 6-1-113, Plaintiff, individually and on behalf of the Colorado Class, seeks monetary relief against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiff and each Colorado Class member.

115.    Plaintiff also seeks an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available

under the Colorado CPA.

## COUNT 4

### Breach of the Implied Warranty of Merchantability
### (Col. Rev. State. §§ 4-2-314 and 4-2.5-212)

### (Plaintiff individually and on behalf of the Colorado Class)

116.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

117.    Volkswagen is and was at all relevant times "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller[s]" of motor vehicles under § 4-2-103(1)(d).

118.    With respect to leases, Volkswagen was at all relevant times a "lessor[s]" of motor vehicles under Colo. Rev. Stat. § 4-2-.5-103(1)(p).

119.    The Class Vehicles are and were at all relevant times "goods' within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

120.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-212).

121.    These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that time.

122.    Volkswagen was provided notice of these issues by the investigations of federal regulators, numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and others within a reasonable amount of time after the allegations of Class Vehicle defects became public.

123.    Volkswagen was and is in actual or constructive privity with Plaintiff and Colorado Class Members.

(a)    Plaintiff and the Colorado Class Members had and continue to have sufficient direct dealings with Volkswagen and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. Volkswagen's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiffs and the Colorado Class Members

(b)    Privity is not required to assert this claim because Plaintiff and the Colorado Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers, franchisees, representatives, and agents.

(c)    By extending express written warranties to end-user purchasers and lessees, Volkswagen brought itself into privity with Plaintiff and Colorado Class Members.

124.    At all relevant times, Colorado law imposed upon Volkswagen a duty that the sunroofs installed in the Class Vehicles were fit for the ordinary purposes for which panoramic sunroofs are used and that they pass without objection in the trade under the contract description.

125.    Volkswagen has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

126.    The sunroofs installed in the Class Vehicles were defective at the time they left Volkswagen's possession. Volkswagen knew of this defect at the time the purchase and lease

transactions occurred. Thus, the sunroofs installed in the Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

127.   Volkswagen failed to inform Plaintiff and Colorado Class Members of the defective condition of the panoramic sunroofs. The failure to warn Plaintiff and Colorado Class Members of this defective condition constitutes a further breach by Volkswagen of the implied warranties of merchantability.

128.   Plaintiff and Colorado Class Members used the sunroofs installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Volkswagen or by operation of law in light of Volkswagen's unconscionable conduct.

129.   Volkswagen had actual knowledge of, and received timely notice regarding, the defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

130.   In addition, Volkswagen received, on information and belief, numerous consumer complaints and other notices from customers advising of the defect associated with the sunroofs installed in the Class Vehicles.

131.   By virtue of the conduct described herein, Volkswagen breached the implied warranty of merchantability.

132.   As a direct and proximate result of Volkswagen's breach of warranties, Plaintiff and Colorado Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible

property, as well as the monies spent and to be spent to repair and/or replace their sunroofs.

133.    Plaintiff and Colorado Class Members are entitled to legal and equitable relief against Volkswagen, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem proper.

134.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and Colorado Class members have been damaged in an amount to be proven at trial.

**COUNT 5**

**Breach of Express Warranty (Col. Rev. State. §§ 4-2-313 and 4-2.5-210)**

**(Plaintiff individually and on behalf of the Colorado Class)**

135.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein

136.    Volkswagen is and was at all relevant times a "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller[s]" of motor vehicles under § 4-2-103(1)(d).

137.    With respect to leases, Volkswagen was at all relevant times a "lessor[s]" of motor vehicles under Colo. Rev. Stat. § 4-2-.5-103(1)(p).

138.    The Class Vehicles are and were at all relevant times "goods' within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

139.    In connection with the purchase or lease of each one of its new vehicles, Volkswagen provided an express New Vehicle Limited Warranty ("NVLW") for a period of six years or 72,000 miles, whichever occurs first. This NVLW exists to provide "virtually bumper to bumper coverage" for Volkswagen vehicles and to provide any repairs needed "to correct a defect

in manufacturer's material or workmanship."

140.    Volkswagen warranties formed a basis of the bargain that was reached when Plaintiff and Colorado Class Members purchased or leased their Class Vehicles equipped with panoramic sunroofs.

141.    Plaintiff and Colorado Class Members experienced defects within the warranty period. Despite the existence of warranties, Volkswagen failed to inform Plaintiff and Colorado Class Members that the Class Vehicles were defectively manufactured and failed to fix the defective panoramic sunroofs free of charge.

142.    Volkswagen breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any parts they supplied. Volkswagen has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

143.    Affording Volkswagen a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

144.    Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Colorado Class Members whole and because Volkswagen has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

145.    Accordingly, recovery by Plaintiff and the Colorado Class Members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the Colorado Class Members, seeks all remedies as allowed by law.

146.    Also, as alleged in more detail herein, at the time Volkswagen warranted and sold

or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Volkswagen had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiff and the Colorado Class Members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

147.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacements or adjustments, as many incidental and consequential damages have already been suffered because of Volkswagen's fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the Colorado Class Members' remedies would be insufficient to make Plaintiff and the Colorado Class Members whole.

148.    Finally, because of Volkswagen's breach of warranty as set forth herein, Plaintiff and the Colorado Class Members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the Colorado Class Members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

149.    Volkswagen was provided notice of these issues by numerous complaints filed against them, including the instant Complaint, within a reasonable amount of time after Volkswagen became aware of the defective panoramic sunroofs in the Class Vehicles.

## IX.  PRAYERS FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the class requests that the Court enter a judgment awarding the following relief:

A.    An order certifying the proposed classes and appointing Plaintiff's counsel to represent the classes;

B.      An order awarding Plaintiff and Class Members their actual damages, punitive damages, and/or any other form of monetary relief provided by law;

C.      An order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.      An order requiring Volkswagen to adequately disclose and repair the defective panoramic sunroofs;

E.      An order awarding Plaintiff and Class Members pre-judgment and post-judgment interest as allowed under the law;

F.      An order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

G.      An order awarding such other and further relief as this Court may deem just and proper.

## X.  JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury all issues so triable under the law.


DATED: November 6, 2017                    Respectfully submitted,

                                           **SIMMONS HANLY CONROY LLC**

                                           */s/Mitchell M. Breit*
                                           Mitchell M. Breit
                                           Paul J. Hanly, Jr.
                                           (*pro hac vice* to be submitted)
                                           **SIMMONS HANLY CONROY LLC**
                                           12 Madison Avenue
                                           New York, New York 10016-7416
                                           Telephone:  (212) 784-6400
                                           Facsimile:  (212) 213-5949
                                           phanly@simmonsfirm.com

mbreit@simmonsfirm.com

Gregory F. Coleman
(*pro hac vice* to be submitted)
Mark E. Silvey
(*pro hac vice* to be submitted)
Adam A. Edwards
(*pro hac vice* to be submitted)
Lisa A. White
(*pro hac vice* to be submitted)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com
lisa@gregcolemanlaw.com

**Attorneys for Plaintiff**